PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DENNIS R. ROMANINI, | ) |
| | ) CASE NO. 5:18cv2513 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| ATRIUM AT ANNA MARIA, INC., | ) |
| | ) **MEMORANDUM OF OPINION AND** |
| Defendant. | ) **ORDER** [Resolving ECF No. 24] |

Pending is Defendant's motion for leave to amend its answer and insert an additional defense. ECF No. 24. Plaintiff opposes the amendment, insisting it is futile. ECF No. 26. For the reasons stated herein, the motion for leave to amend is denied.

**I. Background**

Plaintiff alleges that Defendant unlawfully terminated him from his position as Director of Dining because of his age. ECF No. 1. In discovery, Defendant learned that, just after his discharge, Plaintiff sent his former coworker an allegedly threatening text message stating, among other things, "[I] better not hear that you said anything about me . . . I'll wait for your ass in the fucking parking lot Pal that's how I am." ECF No. 26-2 at PageID#: 134.

Defendant proposes to amend its answer to account for this discovery. ECF No. 24. It argues that, even if it is found liable for unlawful termination, Plaintiff's remedies should be limited in light of the threatening text message because he would have been promptly terminated in any event. *Id.*

(5:18cv2513)

## II.  Legal Standard

### A.  Rule 16(b)

After the cutoff to amend pleading stated in the scheduling order has passed, a party "must first show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).  The Sixth Circuit explained that the "primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (internal citations and quotation marks omitted).  In addition to the movant's diligence, the Court should also consider the possible prejudice to the opponent.  *Id*. (internal citations omitted).

### B.  Rule 15(a)

Because the time to amend pleadings as a matter of course has passed, Defendant may amend only with Plaintiff's consent or with the Court's leave.  Fed. R. Civ. P. 15(a).  Plaintiff opposes the amendment.

Rule 15(a) of the Federal Rules of Civil Procedure directs the Court to grant leave to amend "when justice so requires[,]" and in practice the burden is usually on the party opposing the amendment to demonstrate why the amendment should not be permitted.  Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Denial may be appropriate, however, when there is "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008) (citation omitted).

(5:18cv2513)

### III. Analysis

Plaintiff does not meaningfully posit that Defendant was indilgent in moving for leave to amend or that it could reasonably have been expected to do so earlier. For that reason, Rule 16 poses no hurdle to amendment. *See [Inge, 281 F.3d at 625](#)*.

Rather, Plaintiff principally argues that, pursuant to Rule 15, Defendant's motion for leave to amend should be denied because the proposed amendment is futile. A proposed amendment is futile if the amendment could not withstand a motion to strike under Rule 12(f). *See [Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000)](#)* Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense . . . ." The question before the Court, in essence, is whether Defendant's proposed amendment has any place in Defendant's pleading.

Defendant proposes to plead an "after-acquired evidence defense," according to which it would argue that Plaintiff's post-termination misconduct provided an independent basis for terminating his employment. [ECF No. 24 at PageID#: 123](#) (citing *[McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352 (1995)](#)*). Even if Plaintiff's termination was wrongful, Defendant argues, Plaintiff would have been terminated shortly afterward in any event, and his remedies should be limited accordingly. *[Jones v. Nissan N. Am., Inc., 438 F. App'x 388, 415 (6th Cir. 2011)](#)* ("If the [after-acquired evidence] defense applies, it generally bars the employee from obtaining front pay and reinstatement, and limits backpay." (citing *[Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1168 (6th Cir. 1996)](#)*).

"Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information . . . ." *[McKennon v.](#)*

(5:18cv2513)

*Nashville Banner Publ'g Co.*, 513 U.S. 352, 362 (1995). As an illustration, suppose an employee is hired in January, and in July he is terminated in violation of the ADEA. In August, he sues his former employer, and during litigation the employer learns that the employee had embezzled money back in April. The employer is entitled to present evidence of the April embezzlement and ask the jury to limit its backpay calculation accordingly. *See id.* at 362 ("The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered.").

On its own, however, *McKennon* has nothing to say about alleged misconduct that occurs *after* an employee is terminated, as is Defendant's position here. "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it *at the time of the discharge*." *Id.* at 362-63 (emphasis added).

It is not the case that a plaintiff's post-termination misconduct can never persuade a jury or court to limit the plaintiff's remedies. *See Jones*, 438 F. App'x at 406-07 (collecting cases and discussing the issue); *Sellers v. Mineta*, 358 F.3d 1058, 1062-64 (8th Cir. 2004) (discussing the issue and hypothesizing that a plaintiff convicted of an unrelated crime after termination is likely ineligible for certain remedies). But even so, a plaintiff's alleged post-termination misconduct is irrelevant to the remedies consideration if that misconduct is directly caused by the defendant's wrongdoing in the first place. *See Jones*, 438 F. App'x at 407 (citing *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 555 (10th Cir. 1999) (affirming refusal to give after-acquired evidence instruction when alleged misconduct arose "as a direct result of retaliatory discrimination");

4

(5:18cv2513)

[McKenna v. City of Philadelphia, 636 F. Supp. 2d 446, 462 (E.D. Pa. 2009)](#) ("[A] plaintiff's post-termination wrongdoing must not be attributable to the defendant's conduct . . . .")).

In *Jones* (a pre-termination misconduct case), the plaintiff violated company policy by searching for employment without authorization after he had been placed unfairly on unpaid medical leave. [438 F. App'x at 407](#). The court ruled, "[w]ere it not for Nissan's wrongful imposition of medical restrictions rendering Jones medically unfit for any position at Nissan, Jones would not have been in the position of seeking employment without Nissan's permission, in violation of its rules. Without Nissan's wrongful conduct, Jones would not have violated any rule." [Id.](#) It was inappropriate in that case to limit remedies on the basis of the plaintiff's employment-policy violation because that violation was itself caused by the defendant's wrongdoing. [Id.](#)

"[I]n order to cut off equitable damages, a plaintiff's post-termination wrongdoing must not be attributable to the defendant's conduct . . . ."[1] [Jones, 438 F. App'x at 407](#) (quoting [McKenna, 636 F. Supp. 2d at 462](#)). In this case, Plaintiff's allegedly threatening text messages were the direct result of his termination. Absent his termination, there would have been no reason to write, for example, "Thanks a lot Keith you got me fired congratulations . . . I got fired today . . . It was just like any other night on the line yesterday I'm Fired I better not hear that you said anything bad about me . . . ." [ECF No. 26-1 at PageID#: 132-34](#).

---

[1] For purposes of this motion, it makes no difference whether Plaintiff's termination was justified or not. If a jury concludes that the termination was lawful, then Defendant has no need for an after-acquired evidence defense. If the termination was unlawful, then the after-acquired evidence limitation on remedies is inappropriate, as explained above.

5

(5:18cv2513)

A defendant cannot benefit from its own bad behavior.² In this case, Defendant does not argue that Plaintiff's alleged misconduct was somehow not caused by his termination. That alleged misconduct, therefore, cannot be used to limit Plaintiff's remedies if he succeeds at the liability stage of proceedings. Defendant's proposed amendment is futile, and if permitted, it would not survive a Rule 12(f) motion to strike.

### IV. Conclusion

For the reasons given, Defendant's motion for leave to amend its answer is denied.

IT IS SO ORDERED.

  May 31, 2019                                    /s/ Benita Y. Pearson
Date                                              Benita Y. Pearson
                                                  United States District Judge

---

² "It is not difficult to envision a defendant goading a former employee into losing her temper, only to claim later that certain forms of relief should be unavailable because it would have discharged the plaintiff based on her inability to control her temper." *Medlock*, 164 F.3d at 555 n.7.